United States District Court
Southern District of Texas
**ENTERED**
January 29, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICIA HARMON and THE ESTATE OF WILLIAM BARTON HARMON, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-1732 |
| BAYER BUSINESS AND TECHNOLOGY SERVICES, L.L.C., BAYER CORPORATION WELFARE BENEFITS PLAN, and BAYER CORPORATION, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Patricia Harmon and The Estate of William Barton Harmon, bring this action against defendants, Bayer Business and Technology Services, L.L.C. ("Bayer Services"), Bayer Corporation Welfare Benefits Plan ("Bayer Benefit Plan"), and Bayer Corporation ("Bayer"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., for wrongful denial of life insurance proceeds due to Patricia Harmon as beneficiary of William Barton Harmon and for breach of fiduciary duty. Pending before the court are Defendants' Motion for Complete Summary Judgment (Docket Entry No. 19), and Plaintiff's Motion for Summary Judgment (Docket Entry No. 20). For the reasons stated below, Defendants' Motion for Complete Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

## I.   Summary Judgment Standard

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.   Fed. R. Civ. P. 56(c).   Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).   The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact.'"   Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to present admissible evidence creating genuine issues of material fact for trial.   Id.   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."   Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

## II.   <u>Undisputed Facts and Procedural Background[1]</u>

This action centers around two life insurance polices issued by Metropolitan Life Insurance Company ("Met Life") that William Barton Harmon ("William") obtained while employed by Bayer: a $125,000.00 basic life insurance policy and a $125,000.00 supplemental life insurance policy.  A beneficiary designation form shows that on April 19, 2000, William designated his wife, Patricia Harmon ("Patricia"), as the primary beneficiary and his daughter, Legh Ann Harmon ("Legh Ann"), as the secondary beneficiary.

On November 22, 2004, Legh Ann became the primary beneficiary of the insurance policies, but exactly how that happened is unclear.  The evidence of the beneficiary change is limited and primarily contained in electronic records of Hewitt Associates, the administrative services provider and record keeper for the insurance plan until 2010.  Those records include a computer screen shot showing that the beneficiary change occurred on that date.  The records also include a spreadsheet of Health Insurance Portability and Account Act ("HIPPA") Notices, which has a November 22, 2004, entry for "Confirm PIN Reset," and a November 23, 2004, entry for "HW Bene Confirm."

William Harmon died on June 21, 2010, after a long illness.

---

[1]The facts set forth here are excerpted from Plaintiffs' Original Complaint, Docket Entry No. 1, pp. 3-13 ¶¶ 7-27; Defendant's Motion for Complete Summary Judgment, Docket Entry No. 19, pp. 4-11; Plaintiff's Motion for Summary Judgment, Docket Entry No. 20, pp. 6-10; and the statement of facts set forth in <u>Harmon v. Harmon</u>, 962 F. Supp. 2d 873, 876-79 (S.D. Tex. 2013).

Patricia alleges that the first time she learned of the beneficiary change was after William's death, when the funeral home advised her that the life insurance policy she provided them to cover the expenses had already been paid to Legh Ann.  Met Life phone logs show that on June 25, 2010, Patricia called and stated her belief that she was the beneficiary of William's insurance policies.

On June 28, 2010, the Bayer Benefits Center sent Legh Ann a letter advising her that she was the designated beneficiary of the insurance proceeds and enclosing a claim form.

On June 30, 2010, the Bayer Benefits Center faxed its Employer's Statement to Met Life, informing Met Life of William's death, details of his coverage, and that Legh Ann was the designated beneficiary.

Phone logs show that Patricia called Met Life on July 6, 2010, to inquire about the beneficiary change, and that she called again two days later stating that her daughter wanted to give up her rights and the proceeds, but the Benefits Center refused and informed her that it had to pay the most current beneficiary listed on file.

On July 8, 2010, Legh Ann submitted her claim form and the death certificate to Met Life.

On July 13, 2010, Patricia again called Met Life and the phone log states: "Isn't going to file a clm . . . let Exmnr know not going to file clm, can proceed."

-4-

On July 15, 2010, Met Life paid the insurance proceeds to Legh Ann.  Shortly thereafter, Patricia retained counsel to pursue her alleged interest in the life insurance proceeds.  On July 23, 2010, Patricia's counsel wrote Met Life asserting three bases in support of her claim for benefits as William's beneficiary:  (1) the change in beneficiary was the result of Legh Ann's undue influence; (2) William lacked the mental capacity to understand the effect of his conduct when the beneficiary change occurred; and (3) the life insurance premiums were paid with community property entitling Patricia to a 50% interest.

On August 12, 2010, Met Life responded with a denial of Patricia's claim reasoning that on July 13, 2010, Patricia had advised Met Life that she would not be filing a claim, and that Met Life had, therefore, processed payment in good faith to the most recent beneficiary designation on file, i.e., Legh Ann.  Met Life also informed Patricia's counsel that he had sixty days to file a written appeal, which should include "the reason(s) you believe the claim was improperly denied, and [] any additional comments, documents, records or other [information]."

Patricia hired new counsel who filed a formal appeal with Met Life on October 15, 2010.  In the appeal Patricia's counsel argued that (1) the payment of proceeds to Legh Ann was based on "insufficient and erroneous documentation provided by Bayer;" (2) no evidence was provided to Patricia regarding the beneficiary change; and (3) Patricia had "a good faith belief that there was an

error made in the payment of the [] claim" and "a good faith belief
that the designated beneficiary was changed by means of fraud."  No
evidence was submitted to support Patricia's good faith beliefs.

Met Life referred the appeal to a "senior" who reviewed the
entire file and advised that "[n]othing was provided that would
prove that we paid the wrong Bene based on fraud" and that Met Life
should uphold the paid-in-good-faith letter.  The examiner
requested that the Plan's third-party administrator provide the
actual beneficiary designation on file for William.  Affiliated
Computer Services — the company that replaced Hewitt as the third-
party administrator in 2010 — responded that it did not have any
original beneficiary designation paperwork and that the only
beneficiary designation information that it had received from
Hewitt was in the form of computer screen shots.  Based on the
record before it, Met Life determined that the appeal lacked merit
and upheld the denial of Patricia's claim.

On April 20, 2012, Patricia filed suit in state court naming
both herself and William's estate as plaintiffs.

On May 21, 2012, defendants removed the state court action to
federal court in Galveston, Texas, where the case was assigned
Civil Action No. 3:12-CV-00153.  The amended complaint filed in
that action named six defendants:  Legh Ann Harmon, Xavier Lee
("Lee"), Met Life, Bayer Corporate & Business Services, LLC, Hewitt
Associates, LLC, and Affiliated Computer Services, Inc.  Patricia
alleged that Legh Ann either accessed William's life insurance

-6-

policy information on Met Life's website and secretly changed the beneficiary designation or that she unduly influenced William to change the beneficiary designation.   Based on these allegations Patricia asserted a number of state law tort claims against Legh Ann and Legh Ann's boyfriend, Lee.   Plaintiff asserted causes of action against the corporate defendants under ERISA § 502(a)(1)(B) to recover benefits allegedly due to her under the terms of the employee benefit plan that provided the life insurance policies to William, and under ERISA §§ 502(a)(2), 404(a), and 409 for breach of fiduciary duty.   Patricia never served Bayer and voluntarily dismissed her claims against Hewitt and Affiliated Computer Services, but prosecuted her claims against Met Life arguing that its decision to pay Legh Ann was arbitrary and capricious because it was made with knowledge that:   (1) she was asserting a rival claim; (2) William had mental illnesses when the beneficiary change was made; and (3) no written beneficiary change was on file despite the fact that beneficiary changes had to be in writing.

The defendants in the Galveston action all sought summary judgment.   Legh Ann and Lee argued that Patricia had no evidence to support the claims asserted against them.   Met Life argued that it was absolved of liability because its decision to pay Legh Ann was reasonable and made in good faith; that the breach of fiduciary duty claims under ERISA sections 502(a)(2), 404, and 409 fail as a matter of law; and that the estate did not have the capacity to

sue.  On August 2, 2013, the court granted the defendants' motions for summary judgment, and dismissed the action.

On June 20, 2014, plaintiffs filed the current action against three Bayer defendants who were not named in the Galveston action.

### III.  Analysis

Citing ERISA, § 502(a)(1)(B), plaintiffs "seek to recover benefits due to Patricia Harmon as beneficiary under the terms of two Met Life insurance policies."[2]  Plaintiffs allege that "[t]he denial of Patricia Harmon's claim for life insurance benefits was arbitrary and capricious conduct and an abuse of discretion by the plan administrator,"[3] and that "[t]he denial of life insurance benefits to Patricia Harmon constitutes a breach of fiduciary duty owed by Bayer, Bayer Services and the Bayer Benefit Plan to the plan participant [and] the beneficiary."[4]  Citing ERISA, §§ 502(a)(2), 404(a) and 409, plaintiffs allege that

> Bayer breached its fiduciary duty by failing to act solely in the interest of plan participants, in failing to act in accordance with the Summary Plan Description provisions pertaining to the life insurance benefit program and by failing to make certain that the express terms of the life insurance policies regarding a change of beneficiary were followed.  The conduct of Bayer in this regard was also arbitrary and capricious and a breach of fiduciary duty.[5]

_____

[2]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 15 ¶ 34.

[3]Id. ¶ 35.

[4]Id.

[5]Id. ¶ 36.

Defendants argue that they are entitled to summary judgment because (1) plaintiffs' claims for benefits are barred by the doctrine of collateral estoppel; (2) plaintiffs have no viable ERISA claims for breach of fiduciary duty; and (3) the administrative record contains substantial evidence supporting the denial of Patricia's claim for benefits.[6]   Plaintiffs argue that they are entitled to summary judgment because Bayer, as Plan Administrator, abused its discretion by submitting a claim on William's life insurance policies to Met Life that identified Legh Ann as his sole beneficiary based only on information contained in a computer screen shot.[7]   For the reasons explained below, Defendants' Motion for Complete Summary Judgment will be granted because the court concludes that all of the claims asserted in this action are barred by the doctrine of collateral estoppel; and, if a higher court determines otherwise, because plaintiffs have no viable ERISA claims for breach of fiduciary duty; and because the administrative record contains substantial evidence supporting the denial of Patricia's claim for benefits.

---

[6]See Defendants' Motion for Complete Summary Judgment, Docket Entry No. 19; Defendants' Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 22; and Defendants' Reply to Plaintiff's Response to Defendants' Motion for Complete Summary Judgment, Docket Entry No. 23.

[7]Plaintiff's Motion for Summary Judgment, Docket Entry No. 20; Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, Docket Entry No. 21.

## A.   Plaintiffs' Claims Are Collaterally Estopped

Defendants argue that plaintiffs are "collaterally estopped from asserting [their] claim[s] for denial of life insurance benefits because [their] previous lawsuit litigated this same issue and resolved it in favor of the defendants."[8]   Plaintiffs respond that their claims for denial of life insurance benefits are not collaterally estopped because the issues raised here are not identical to the issues raised or litigated in the prior action.[9]

### 1.   Applicable Law

The rule of collateral estoppel — also referred to as issue preclusion — instructs that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude litigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 101 S. Ct. 411, 414 (1980).  See also Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) (quoting New Hampshire v. Maine, 121 S. Ct. 1808, 1814 (2001) ("Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid

---

[8]Defendants' Reply to Plaintiff's Response to Defendants' Motion for Complete Summary Judgment, Docket Entry No. 23, p. 2.

[9]Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, Docket Entry No. 21, pp. 13-14.   Although plaintiffs also state that defendants are attempting "to use issue preclusion defensively against a plaintiff who was not a party to the first suit," id. at 12, that appears to be a misstatement as the two plaintiffs in this suit were both plaintiffs in the prior suit.  See Plaintiffs' Amended Complaint, Docket Entry No. 13 in Civil Action No. 3:12-cv-153, naming as plaintiffs Patricia Harmon and the Estate of William Barton Harmon.

court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim.")).  The purposes of collateral estoppel are to protect parties from multiple lawsuits, to avoid the possibility of inconsistent decisions, and to conserve judicial resources.  <u>See</u> <u>Allen</u>, 101 S. Ct. at 414.   To establish collateral estoppel, a party must show:

> (1)   that the issue at stake [is] identical to the one involved in the prior litigation;
>
> (2)   that the issue has been actually litigated in the prior litigation; and
>
> (3)   that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

<u>Rabo Agrifinance, Inc. v. Terra XXI, Ltd.</u>, 583 F.3d 348, 353 (5th Cir. 2009) (citing <u>Wehling v. Columbia Broadcasting System</u>, 721 F.2d 506, 508 (5th Cir. 1983)).

If a litigant has fully and fairly litigated an issue, third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit through the principle of nonmutual collateral estoppel.  <u>See</u> <u>United States v. Mollier</u>, 853 F.2d 1169, 1175 n.7 (5th Cir. 1988).   <u>See also</u> <u>Wehling</u>, 721 F.2d at 508 ("Complete identity of [the] parties in the two suits is not required.").  While complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must have been a party, or privy to a party, in the prior litigation.  <u>Vines v. University of Louisiana at Monroe</u>, 398 F.3d 700, 705 (5th Cir. 2005).  <u>See also</u>

<u>Wehling</u>, 721 F.2d at 508 ("The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit."); <u>Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation</u>, 91 S. Ct. 1434, 1440-41 (1971) (permitting non-mutual defensive collateral estoppel); <u>Parklane Hosiery Co., Inc. v. Shore</u>, 99 S. Ct. 645, 649 n.4 (1979) (acknowledging that nonmutual collateral estoppel may be invoked by a defendant who "seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant").  "The party seeking to assert that an issue was already adjudicated upon bears the burden of proving that contention."  <u>In re Braniff Airways, Inc.</u>, 783 F.2d 1283, 1289 (5th Cir. 1986).

2.   <u>The Issue at Stake Here Is Identical to the Issue at Stake and Actually Litigated in the Prior Action</u>

With respect to identity of issues, the reach of collateral estoppel is confined to situations where the issue at stake in the second action is identical to that decided in the first action. See <u>Commissioner of Internal Revenue v. Sunnen</u>, 68 S. Ct. 715, 721 (1948).  Plaintiffs argue that "[t]he issues in the prior litigation are not identical to the issues in this litigation"[10] because

_____

   [10]Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, Docket Entry No. 21, p. 14.

-12-

> [i]n the prior litigation the Plaintiffs alleged that Met
> Life abused its discretion by accepting a screen shot
> provided to it by ExHRO, Bayer's third party
> administrator, as the designation of a beneficiary rather
> than a designation of beneficiary signed by William B.
> Harmon[, while t]he issue in this case is not what Met
> Life would accept but what Bayer, as the Plan
> Administrator, submitted to Met Life through its third
> party administrator with respect to William B. Harmon's
> beneficiary designation and the fact that Bayer's third
> party administrator falsely represented to Met Life in
> the Employer's Insurance Claim Form . . . that the most
> recent designation of beneficiary showing Legh Ann Harmon
> was available when such beneficiary designation did not
> exist."[11]

Plaintiffs also argue that the following issues raised in this case

were not litigated in the prior action:

> (1) the issue of whether Bayer, as the Plan
> Administrator[,] abused its discretion and breached
> fiduciary duties owed to Plaintiff by falsely
> representing to Met Life that it possessed the most
> current beneficiary designation and (2) the issue of
> whether Bayer, as the Plan Administrator, breached its
> fiduciary duty to Plaintiff by failing to disclose to
> Plaintiff that it did not possess a beneficiary
> designation signed by William B. Harmon that designated
> Legh Ann Harmon the beneficiary of his life insurance
> policies[,] and [] (3) that Bayer, as the Plan
> Administrator, breached its fiduciary duty to Plaintiff
> by not following the clear language of the Summary Plan
> Description concerning the designation of a
> beneficiary.[12]

Plaintiffs argue that "[d]efendants offer no summary judgment

evidence that the issue of a breach of fiduciary duty as to Bayer,

as the Plan Administrator was decided in the prior litigation."[13]

---

[11]Id.

[12]Id. at 14-15.

[13]Id. at 15.

The relevant issue in the prior action was whether Met Life abused its discretion by identifying Legh Ann as the beneficiary of William's life insurance policies and, therefore, denying Patricia's claim to the life insurance proceeds. See Firestone Tire & Rubber Co. v. Bruch, 109 S. Ct. 948, 956-57 (1989) (recognizing that courts review a plan administrator or fiduciary's discretionary decision to deny plan benefits under an abuse of discretion standard). "Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" Corry v. Liberty Life Assurance Co. of Boston, 499 F.3d 389, 397-98 (5th Cir. 2007). The court in the prior action granted Met Life's motion for summary judgment on plaintiffs' ERISA claims for benefits after concluding that Met Life did not abuse its discretion and did not act arbitrarily and capriciously by relying on computer records to determine that Legh Ann Harmon — not Patricia Harmon — was William Barton Harmon's beneficiary. The court explained:

> MetLife did not abuse its discretion when it issued the insurance benefits to Legh Ann and later when it denied Patricia's appeal, because its decisions were based on substantial evidence — namely, Hewitt's electronic records showing the beneficiary designation change on November 22, 2004. Plaintiffs object to MetLife's decision to pay the insurance benefits to Legh Ann on three grounds: (1) "Met Life knew Patricia [] was asserting a rival claim"; (2) "Met Life knew that William [] suffered from a mental disability that would render him incapable of changing the designated beneficiary"; and (3) "Met Life knew the date on the written beneficiary designation naming Legh Ann [] the

beneficiary under William[']s life insurance policies could not be ascertained by Met Life causing the written beneficiary designation of Legh Ann [] to be defective and non compliant with the Summary Plan Description and the terms of the Met Life insurance policies." Docket Entry No. 48 at 9. The Court finds these objections unconvincing.

First, whether MetLife knew that Patricia was asserting a rival claim when it paid Legh Ann is insignificant. The question in reviewing even a disputed claim is whether Metlife's decision was an abuse of discretion. And, in any event, Patricia still had the opportunity to appeal the decision, which she did, though unsuccessfully.

Plaintiffs' second argument, regarding MetLife's knowledge of William's incapacity, is also unavailing. According to Plaintiffs, MetLife knew that William was disabled because Williams' "employee records would contain extensive records regarding [his] disability including information that he was receiving social security disability benefits." Docket Entry No. 48 at 10-11. There is a big difference between having a disability and being incapacitated. Plaintiffs fail to identify any information that MetLife possessed showing that William was incapacitated in 2004. Such evidence must have been in the administrative record and not merely in Plaintiffs' summary judgment submissions . . . When Patricia filed her appeal with MetLife, she did not attach any medical records or other information suggesting that William was mentally incapacitated in November 2004, even though MetLife's right-to-appeal letter advised her to include any additional documents or records. Docket Entry No. 42 at 6-9. Therefore, even if MetLife possessed documents regarding William's disability in its employee records . . . MetLife did not abuse its discretion by failing to conclude from that information that on November 22, 2004, William lacked "sufficient mind and memory to understand the nature and effect of his act." . . .

Plaintiffs' third objection concerns whether MetLife abused its discretion by paying Legh Ann even though it did not have written documentation designating her as the beneficiary. Plaintiffs' argument is premised on the notion that the plan requires beneficiary changes to be in writing and that the beneficiary change was invalid because it was purportedly made online. As discussed

-15-

above, it is not clear the change was made online, and
unlike this Court's standard for viewing the evidence,
MetLife need not resolve that dispute in Plaintiffs'
favor.  Moreover, the record is not clear whether the
plan actually prohibited online or telephonic beneficiary
changes.  For instance, the insurance certificate allows
a participant to change his beneficiary designation by
"send[ing] a Signed and dated, Written request to the
Policyholder using a form satisfactory to Us"; however,
it defines "Written" as "a record which is on or
transmitted by paper or electronic media which is
acceptable to Us and consistent with applicable law."
Docket Entry No. 40 at 32, 35.  And other insurance plan
documents, such as the Online Bayer Benefits Manual,
allow a participant to "change [his] beneficiary at any
time on this site or by calling the Bayer Benefits Center
and [the] choices will take effect immediately."  Docket
Entry No. 38-7 at 76; see also id. at 79 (allowing online
beneficiary changes).  In the end, MetLife chose to
follow the most recent records it had from the third-
party administrator, which showed that Legh Ann was the
last named beneficiary.  Those records were merely
computer screenshots and may not have been as reliable as
certain other forms, but they nonetheless provided
substantial evidence from which MetLife could make a
decision.  The law does not require that MetLife base its
decision by a preponderance of the evidence, but merely
by more than a scintilla. . .

Harmon, 962 F. Supp. 2d at 885-87.

Plaintiffs' current action against the Bayer defendants raises

the same factual and legal issues that were raised in the prior

action against MetLife, i.e., whether denial of Patricia's claim

for life insurance benefits as the beneficiary of William's life

insurance policies constitutes an abuse of discretion, and whether

the plan administrators and fiduciaries' reliance on computer

records to determine that Legh Ann — not Patricia — was the

beneficiary of William's life insurance policies was arbitrary and

capricious.  Plaintiffs contend that the issues in the two actions

are different because their arguments in this action are focused on Bayer's actions while their arguments in the previous action were focused on the actions of other plan administrators and fiduciaries. But under the doctrine of collateral estoppel reliance on different arguments does not require relitigation of identical issues. <u>Crossroads Systems (Texas), Inc. v. Dot Hill Systems Corp.</u>, No. A-03-CA-754-SS, 2006 WL 1544621, *5 (W.D. Tex. May 31, 2006).

Plaintiffs' argument that they are not collaterally estopped from arguing that Patricia — not Legh Ann — was the beneficiary of William's life insurance policies based on claims that Bayer breached its fiduciary duties is unavailing because the relevant question in the collateral estoppel analysis is not the identity of the claims asserted in the two actions, but the identity of the legal or factual issues raised in them. Moreover, the ERISA provisions on which plaintiffs' breach of fiduciary duty claims are based only authorize participants, beneficiaries, and fiduciaries to bring actions to recover for violations of fiduciary duties owed to the plan as a whole, as opposed to duties owed to an individual participant or beneficiary. <u>See</u> 29 U.S.C. §§ 1024(b)(4), 1132(c)(3). Because the issue of whether Patricia was the beneficiary of William's life insurance policies has already been decided against plaintiffs in the prior action, <u>Harmon</u>, 962 F. Supp. 2d at 885-87, and because collateral estoppel precludes

-17-

plaintiffs from relitigating that issue here, plaintiffs cannot establish that they are entitled to relief on the ERISA breach of fiduciary duties claims that they have asserted against the defendants named in this action.

**B.    Plaintiffs' Breach of Fiduciary Duty Claims Are Not Cognizable**

Defendants argue that they are entitled to complete summary judgment on plaintiffs' claims for breach of fiduciary duty because ERISA does not allow claimants seeking plan benefits to assert claims for breach of fiduciary duty based only on their own alleged injuries as opposed to injuries suffered by the entire plan, and because even if these claims were authorized by ERISA, they are time barred.[14]

1.    Breach of Fiduciary Duty Claims Duplicate Benefits Claims

Plaintiffs allege that Bayer breached its fiduciary duty by failing to act solely in the interest of plan participants, by failing to act in accordance with the Summary Plan Description provisions pertaining to the life insurance benefit program, and by failing to make certain that the express terms of the life insurance policies regarding the change of beneficiary were followed.[15]   The ERISA provisions on which plaintiffs' fiduciary

---

[14]Defendants' Motion for Complete Summary Judgment, Docket Entry No. 19, pp. 16-18.

[15]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 15 ¶ 36.

duty claims are based only provide causes of action for breaches of
fiduciary duty to the plan as a whole, as opposed to an individual
participant or beneficiary. See 29 U.S.C. § 1132(a)(2). See also
LaRue v. DeWolff, Boberg & Associates, Inc., 128 S. Ct. 1020, 1026
(2008) (recognizing that under well-established Supreme Court
precedent, 29 U.S.C. § 1132(a)(2) "does not provide a remedy for
individual injuries distinct from plan injuries"); Massachusetts
Mutual Life Insurance Co. v. Russell, 105 S. Ct. 3085, 3090 (1985)
("A fair contextual reading of the statute makes it abundantly
clear that its draftsmen were primarily concerned with the possible
misuse of plan assets, and with remedies that would protect the
entire plan, rather than with the rights of an individual
beneficiary."). Because plaintiffs' claims do not seek recovery
for injuries to the plan resulting from mismanagement of plan
assets but, instead, seek recovery for their own individual
injuries, their breach of fiduciary duty claims fail as a matter of
law. See LifeCare Management, 703 F.3d at 846 n.10 ("[W]hen a
beneficiary wants what was supposed to have been distributed under
a plan, the appropriate remedy is a claim for denial of benefits
under § 502(a)(1)(B) of ERISA rather than a fiduciary duty claim
brought pursuant to § 502(a)(3)."); Tolson v. Avondale Industries,
Inc., 141 F.3d 604, 610 (5th Cir. 1998) ("Because [the plaintiff]
has adequate relief available for the alleged improper denial of
benefits through his right to sue the Plans directly under section

-19-

1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").

## 2.   Breach of Fiduciary Duty Claims Are Time Barred

Defendants also argue that plaintiff's breach of fiduciary duty claims are barred by ERISA's three-year statute of limitations because plaintiffs had actual knowledge of an ERISA violation by November 22, 2010, but did not file their complaint in this action until June 20, 2014.  Defendants argue that

> MetLife paid the insurance proceeds to Legh Ann Harmon on July 15, 2010.  By October 15, 2010, Harmon had hired an attorney who appealed the initial denial of her benefits claim in a letter, and in that letter, referenced ERISA and fiduciaries.  [Bayer [Harmon] 00547-00548].  MetLife then upheld the denial of Harmon's claim for benefits on November 22, 2010.  [Bayer [Harmon] 00558-559].  Thus, as of November 22, 2010, Harmon had actual knowledge of all the material facts necessary to understand that a claim existed under ERISA, and therefore, November 22, 2010, is the latest date that Harmon had actual knowledge of the alleged breach upon which her claim is based.[16]

Plaintiffs argue that they timely filed this action and they did not have actual knowledge of any breach of an ERISA violation until after January 27, 2013, when Met Life produced its claim file to plaintiffs in the previous action.[17]  Plaintiffs contend that only then did they learn of "email correspondence between Met Life

_____

[16]Defendants' Motion for Complete Summary Judgment, Docket Entry No. 19, p. 16.  See also Defendants' Reply to Plaintiff's Response to Defendants' Motion for Complete Summary Judgment, Docket Entry No. 23, pp. 7-8.

[17]Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, Docket Entry No. 21, pp. 15-17 ¶¶ 26-29.

and the ExHRO stating that there was no written or paper beneficiary designation for Legh Ann Harmon. . . This lawsuit was filed [o]n June 20, 2014[,] which is well within the three year statute of limitations."[18]

ERISA provides that a claim premised on an alleged violation of its provisions by a fiduciary must be brought within three years of the date the plaintiff first obtained actual knowledge of the breach or violation forming the basis for the claim.   29 U.S.C. § 1113.  See also Radford v. General Dynamics Corp., 151 F.3d 396, 398 (5th Cir. 1998) (holding that a breach of fiduciary duty claim arising under ERISA based on an alleged misrepresentation is subject to the statute of limitations in § 1113).   In the Fifth Circuit "[a]ctual knowledge 'requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm.'"  Reich v. Lancaster, 55 F.3d 1034, 1057 (5th Cir. 1995) (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992)).   "That is to say, actual knowledge requires that the [plaintiff] know not only of the events constituting the breach, but 'also that those events supported a claim for breach of fiduciary duty or violation under ERISA.'"  Babcock v. Hartmarx Corp., 182 F.3d 336, 339 (5th Cir. 1999) (citation omitted).

---

[18]Id. at 16 ¶ 27.

Plaintiffs' contention that they did not have actual knowledge
of the alleged breach of fiduciary duty or ERISA violation asserted
in this action before January 27, 2013, when Met Life produced its
claim file to them in the previous action because only then did
they learn that there was no written or paper beneficiary
designation for Legh Ann Harmon is belied by the text of the
October 15, 2010, letter that Patricia's counsel sent to Met Life
in support of her initial appeal of Met Life's denial of her claim.
In pertinent part that letter states:

> ERISA APPEAL LETTER:
>
> Pursuant to the Employee Retirement Income Security
> Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-
> 1461, Patricia Harmon respectfully appeals the decision
> of MetLife as the claims fiduciary for the following
> reasons:
>
> MetLife made a payment based upon insufficient and
> erroneous documentation provided by Bayer Corporation and
> Business Services LLC. Specifically, William Harmon, the
> plan participant, designated Ms. Patricia Harmon as the
> beneficiary for his Basic & Optional Life Coverage.
> MetLife paid the claim to Legh Ann Harmon based upon
> insufficient documentation provided by Bayer Corporation
> and Business Services LLC. Upon inquiry, Ms. Harmon was
> advised by MetLife that the plan participant's policy was
> paid in accordance with an electronic communication
> provided by Bayer Corporation and Business Services LLC
> and nothing more.
>
> Bayer Corporation and Business Services LLC has not
> provided any evidence to Ms. Harmon of the designation of
> beneficiary to this date. Similarly, MetLife has
> provided no information other than a mere assertion that
> Bayer Corporation and Business Services LLC sent an
> electronic communication and the claim was paid according
> to this communication. In fact, MetLife has provided no

proof or evidence to suggest that Legh Ann Harmon was in fact the designated beneficiary.[19]

This case is similar to Babcock, 182 F.3d at 336, in which the Fifth Circuit found that the plaintiffs had knowledge of an ERISA claim over three years before filing their suit.  In Babcock the plaintiffs had written multiple letters to the defendant detailing their knowledge that their group insurance plan was governed by ERISA and that it had been violated.  See id.  Accordingly, the Fifth Circuit held that it was clear the plaintiffs "knew that [the defendant] had denied their life insurance claims; knew of the harm they allegedly suffered; were aware that the group insurance plan was covered under ERISA guidelines; had made demands for the money; knew that [the defendant] had denied their claim; and were aware that they might have a legal claim."  Id. at 339-40.  The contents of an October 15, 2010, letter from Patricia's counsel to MetLife shows that by that date plaintiffs knew the material facts necessary to understand that they may have ERISA claims for breach of fiduciary duty, i.e., the October 15, 2010, letter makes clear that Patricia knew that MetLife had denied her life insurance claim; knew of the harm she allegedly suffered; was aware that the group insurance plan was covered under ERISA guidelines; had made demands for the money; knew the role that Bayer had played in the

---

[19]Exhibit B to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Complete Summary Judgment, Docket Entry No. 23-2.

denial of her claim, and was aware that she might have a legal claim.  Because the breach of fiduciary duty claims asserted in this action were filed over three years later, they are time barred.

## C.   Denial of Patricia's Claim Was Supported by Substantial Evidence

Asserting that Met Life was the Plan fiduciary with the discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the Plan, defendants argue that this court must apply an abuse of discretion standard in reviewing the factual determinations underlying the denial of Patricia's claim to proceeds from William's life insurance policies.  Defendants argue that they are entitled to summary judgment because Patricia is unable to show that Met Life's denial of her claim to the proceeds from William's life insurance policies constituted an abuse of discretion.[20]

Asserting that the Plan Administrator placed itself in a position of conflict with Patricia by representing to Met Life, through its third-party administrator, that Legh Ann was William's beneficiary and that it possessed the most current beneficiary

---

[20]Defendants' Motion for Complete Summary Judgment, Docket Entry No. 19, pp. 13-16.  See also Defendants' Reply to Plaintiff's Response to Defendants' Motion for Complete Summary Judgment, Docket Entry No. 23, pp. 3-7.

designation when it did not possess such a designation, plaintiffs argue that this court should apply a de novo standard of review instead of an abuse of discretion standard.  Plaintiffs argue that

> Bayer, as the Plan Administrator, having a fiduciary duty of full disclosure, breached its fiduciary duty by failing to disclose [to Patricia] that it submitted William B. Harmon's life insurance claim to Met Life without having a signed beneficiary designation from William B. Harmon designating Legh Ann Harmon as his beneficiary.[21]

Alternatively, plaintiffs argue that denial of Patricia's claim to the proceeds from William's life insurance policies constituted an abuse of discretion because the Plan administrator failed to abide by the terms of the Plan and because the Plan administrator's interpretation of the Plan is not consistent with ERISA's goals.[22] Plaintiffs also object to some of defendants' summary judgment evidence as hearsay.  Specifically, plaintiffs object to defendants' reliance on the content of telephone conversations between Patricia and personnel of Met Life memorialized only in phone logs; and plaintiffs object to defendants' reliance on computer screen shots that they contend could not have belonged to the administrative record used to deny her claim because they are clearly identified as having been generated on October 29, 2012, almost two years after Patricia's claim was denied.[23]

---

[21]Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, Docket Entry No. 21, p. 7 ¶ 7.

[22]Id. at 17-28 ¶¶ 30-50.

[23]Id. at 10.

1.    <u>Plaintiffs' Objections to Defendants' Evidence Have No
Merit</u>

Plaintiffs object to defendants' summary judgment evidence,
arguing that documents within the Administrative Record should not
be considered by the court because they contain hearsay.  In an
ERISA case, however, hearsay objections to documents in an
Administrative Record are not valid because a court's review of the
administrator's decision is based on the entire Administrative
Record.  <u>See</u> <u>Herman v. Hartford Life and Accident Insurance Co.</u>,
508 F. App'x 923, 928 (11th Cir. 2013) ("[Plaintiff's] hearsay
argument is misplaced, as the district court's review was limited
only by what was available to the plan administrator, not by the
Federal Rules of Evidence."); <u>Black v. Long Term Disability
Insurance</u>, 582 F.3d 738, 746 n.3 (7th Cir. 2009) ("The Federal
Rules of Evidence, however, do not apply to an ERISA
administrator's benefits determination, and we review the entire
administrative record, including hearsay evidence relied upon by
the administrator.").  Plaintiff's objections to computer screen
shots as having been generated after the denial of benefits
decision at issue was made is similarly misplaced because the
October 2012 date merely reflects the date the screen shot was
printed for purposes of discovery in the prior action.  When read
together the documents from the administrative record produced in
this action indicate that the designation of Legh Ann as William's
beneficiary took effect in November of 2004.  Thus, the documents

within the Administrative Record — including those that may contain hearsay — are proper summary judgment evidence.

2.   <u>Abuse of Discretion Standard Applies</u>

When, as here, Plan documents provide the fiduciaries and administrators with discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits, the courts apply the abuse of discretion standard to challenges made to the Plan Administrator's discretionary decisions. <u>See</u> <u>Bruch</u>, 109 S. Ct. at 956-57 (recognizing that courts review a plan administrator or fiduciary's discretionary decision to deny plan benefits under an abuse of discretion standard). When the Plan Administrator both evaluates claims for benefits and pays benefits out of its own pocket, courts consider that conflict of interest as a factor in determining whether the plan administrator abused its discretion. <u>Truitt v. Unum Life Insurance Co. of America</u>, 729 F.3d 497, 508 (5th Cir. 2013) (quoting <u>Metropolitan Life Insurance Co. v. Glenn</u>, 128 S. Ct. 2343, 2351 (2008) ("[C]onflicts are but one factor among many that a reviewing judge must take into account.")).

3.   <u>Plan Administrators Did Not Abuse Their Discretion By Denying Patricia's Claim to Benefits</u>

"Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" <u>Corry</u>, 499 F.3d

-27-

at 397-98.   "A decision is arbitrary and capricious only if it is 'made without a rational connection between the known facts and the decision or between the found facts and the decision.'"   Truitt, 729 F.3d at 508 (quoting Meditrust Financial Services Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 215 (5th Cir. 1999)).   See also Vega v. National Life Ins. Services, Inc., 188 F.3d 287, 302 (5th Cir. 1999) (en banc) (observing that there only need be "concrete evidence in the administrative record that supports the denial of the claim"), overruled on other grounds by Glenn, 128 S. Ct. at 2343; Holland v. International Paper Co. Retirement Plan, 576 F.3d 240, 247 (5th Cir. 2009) ("Our 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even on the low end.'") (quoting Corry, 499 F.3d at 398).

The decision to pay the proceeds of William's life insurance policies to his daughter, Legh Ann, was supported by substantial evidence.   Specifically, the computer screen shots from the electronic records of Hewitt Associates indicate that in November of 2004 the beneficiary designated to receive the proceeds from William's life insurance policies changed from his wife, Patricia, to his daughter, Legh Ann.   These screen shots also indicate that the change in designation was made via form (as evidenced by the entry "Request Method: Form") on November 22, 2004.   Because the

decision to pay Legh Ann the life insurance benefits was based on the information current in the computer system as of the date of William's death, and because Patricia failed to present any evidence showing why the benefits should not be paid to the beneficiary on file, the administrator's decision to deny Patricia's claim to the life insurance benefits was supported by substantial evidence in the administrative record and, therefore, was not an abuse of discretion.  See Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004) (administrator's desison is not an abuse of discretion if it is supported by substantial evidence).   Courts faced with similar facts have reached the same conclusion.  See Prudential Insurance Co. of America v. Lehman, Civil Action No. 99-C-4304, 2001 WL 138922, *4 (N.D. Ill. February 16, 2001) ("Prudential's failure to turn up the Change of Beneficiary form in its records cannot obscure the only reasonable inference from the record that Prudential *did* provide: that [decedent] had indeed requested a change of beneficiary in a manner satisfactory to Prudential."). See also Harmon, 962 F. Supp. 2d at 885-87 (court in plaintiffs' previous action held that the denial of Patricia's claim to William's life insurance benefits was not an abuse of discretion).

## IV.  Conclusions and Order

For the reasons stated above in § III.C.1, plaintiffs' objections to defendants' summary judgment evidence are **OVERRULED**.

Defendants' Motion for Complete Summary Judgment (Docket Entry No. 19) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (Docket Entry No. 20) is **DENIED**.

  **SIGNED** at Houston, Texas, on this 29th day of January, 2016.

               _____

                 SIM LAKE

            UNITED STATES DISTRICT JUDGE